IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLEKSANDER CHERNOBAI, | : CIVIL ACTION NO.: <br> : 2:14-CV-06938-GJP |
| Plaintiff, | : |
| v. | : |
| HYDRAULAX PRODUCTS, INC., | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS BY
DEFENDANT HYDRAULAX PRODUCTS, INC.'S**

Defendant Hydraulax Products, Inc. ("HPI"), by and through its counsel, submits its Memorandum of Law in support of its Motion for Sanctions against Plaintiff's counsel Ari Risson Karpf and Zachary Zahner, pursuant to Section 1927 of Title 28 of the United States Code and Federal Rule of Civil Procedure 11.

**I.    NARRATIVE AND PROCEDURAL HISTORY**

Plaintiff brought this action against his former employer HPI, alleging that he was wrongfully terminated because of his national origin in violation of the Pennsylvania Human Relations Act ("PHRA") and Title VII of the Civil Rights Act of 1964. The action was commenced on or about November 5, 2014 in the Court of Common Pleas, Philadelphia County. Defendant HPI timely removed the action on December 5, 2014 and filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 30, 2014, Plaintiff filed a First Amended Complaint and on January 16, 2015, Defendant HPI filed a Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6).

Oral argument was held on Defendant HPI's Motion to Dismiss the First Amended Complaint on February 12, 2015. At oral argument, Plaintiff's counsel Mark T. Sotille, Esquire assured the Court that Plaintiff was not pursuing a hostile work environment claim. (Doc. 21, p. 3 n.2). In Plaintiff's opposition to Defendant HPI's Motion to Dismiss and at oral argument, Plaintiff asserted an inference of national origin discrimination based on alleged discriminatory comments and disparate treatment. (*Id.* p. 3).

As to the alleged discriminatory comments, the Court, in its Memorandum of February 19, 2015, found that Plaintiff did not "identify in the Amended Complaint the individual(s) who called him a 'stupid Russian' or provide any facts showing that this comment was in any way connected to his termination." (*Id.* p. 5). At footnote 3, the Court also noted that Plaintiff's counsel "for the first time identified 'Michael' as the individual who called [Plaintiff] 'stupid Russian' (Hr'g Tr. 16, Feb. 12, 2015.) and , further noted that "despite the fact that 'Michael' was allegedly [Plaintiff's] 'direct supervisor,' counsel did not know his last name, (*id.*), and he could not even say for sure that 'Michael' was involved in the decision to terminate [Plaintiff]. (*Id.* at 25-26.)" (*Id.* n.3).

As it related to the disparate treatment inference, the Court noted that Plaintiff alleged "that other 'non-management employees' who had 'some or all of the same supervisors' were permitted to speak a non-English language and were not assigned additional, menial tasks." (Citation omitted) (Doc. 21, p. 7). The Court stated that "[a]bsent from these allegations are any facts showing that there were no mitigating or distinguishing factors explaining the difference in treatment." (*Id.*). The Court further found that Plaintiff did not "identify the individual(s) who treated him less favorably or any individual(s) who had a role in his termination." (*Id.*). In short,

the Court found that Plaintiff alleged "no facts establishing a connection between this treatment and his termination."

The Court also found that while Plaintiff alleges he was terminated for using his allotted sick time while other non-Ukrainian and/or non-Slavic employees were not, Plaintiff failed to describe the sick time policies nor allege that he was subject to the same policy as unidentified employees. (Doc. 21, p. 8). The Court also noted that Plaintiff did not allege that he was similar in all relevant respects to employees who were treated more favorably. (*Id.* p. 8). In granting Defendant HPI's Motion to Dismiss, the Court afforded Plaintiff one last opportunity to properly plead his claims to include additional factual allegations, if any, that create a reasonable inference of discrimination. (*Id.* p. 9).

Plaintiff's counsel filed a Second Amended Complaint on March 2, 2015. In the Second Amended Complaint, the only new factual allegations consisted of:

- Plaintiff identifying his supervisor Michael Kane who he alleges subjected him to discriminatory treatment by: (1) assigning the most unfavorable and menial work; (2) assigning additional work; (3) requiring Plaintiff to speak English; (4) calling Plaintiff "stupid Russian"; and (4) selectively enforcing policies against Plaintff.

- Kenneth Nolan told Plaintiff that his employment was being terminated for missing too much work.

- Defendant HPI allowed non-Ukrainian, non-Slavic employees to miss similar or more time from work than Plaintiff without termination.

- Upon information and belief, alleging that Michael Kane and Kenneth Nolan were involved in the decision to terminate.

3

- Upon information and belief, that the only other Slavic employee of Defendant HPI was treated in a manner similar to the way Plaintiff was treated.

Defendant HPI filed a Motion to Dismiss the Second Amended Complaint which the Court denied without a Memorandum Opinion, finding that Plaintiff has pled sufficient factual matter permitting a reasonable inference that he was terminated because of his national origin.

On May 28, 2015, Plaintiff was deposed. Plaintiff testified that prior to his deposition he did not meet with his attorneys. Based on Plaintiff's sworn testimony, it was discovered that the factual allegations in Plaintiff's Second Amended Complaint were simply untrue and that Plaintiff's counsel knew or should have known this at the time that Plaintiff's Second Amended Complaint was filed.

Plaintiff testified that he was told by his friend Anatoly Leskin that there was an opening at Defendant HPI's predecessor company and that his supervisor Kenneth Nolan wanted to hire a person from Ukraine or Russia to fill the position. Plaintiff interviewed with Mr. Nolan and was hired, beginning work on September 12, 2012. He further testified that Michael Kane was his supervisor in the warehouse and that Mr. Nolan was the senior manager. During his employment with the old company, Plaintiff testified that he had had problems with his supervisor Michael Kane who he testified was rude to him and called him names such as "stupid Russian."

According to Plaintiff, the company he started with was sold, and in January 2013, Plaintiff met the new owner of the company, Ira Krassan. Plaintiff testified that his co-workers at Defendant HPI were Patrick Gaier, Zakhar Kozyak, Anatoly Leskin, Radames Lopez, Francis Ocasio and Raymondy O'Brien.

According to Plaintiff, his job duties in the warehouse changed in March 2013 when another Ukrainian employee Mr. Kozyak quit his job to return to the Ukraine and Plaintiff was

given responsibility for one of Defendant HPI's largest customers, PTR. Plaintiff admitted that he never complained to anyone about this new job assignment. But did testify that one of his co-workers complemented him on the job he was doing. Importantly, Plaintiff testified that he did the same job that his co-workers did in the warehouse with the exception that he would have to go to the customer PTR's place of business three mornings a week to count product, after which he returned to the warehouse.

Plaintiff admitted that he never heard Mr. Kane speak to the other two Ukrainian employees Mr. Zakhar Kozyak and Mr. Anatoly Leskin in the same manner in which Mr. Kane spoke to Plaintiff. Plaintiff also testified that Mr. Kane on only two occasions told him to speak English but provided no time frame (i.e. old company v. new company) when such statements was made. Plaintiff also admitted that Mr. Kane would yell at him, Anatoly Leskin and Raymond O'Brien.

Plaintiff admitted that when he started to work for Defendant HPI, he never complained to the new owner Mr. Krassan or to Mr. Nolan about Michael Kane or any other co-workers. He also testified that when Mr. Krassan took over the company, he too worked in the warehouse, familiarizing himself with the work and even made tubing with fittings for Plaintiff's assigned customer PTR. Plaintiff admitted he never had any problems with Mr. Nolan before Defendant HPI took over or after. He also admitted that Mr. Nolan never called him "stupid Russian" and did not know if Mr. Nolan heard Mr. Kane call Plaintiff a "stupid Russian."

Plaintiff testified that one co-worker who started with Defendant HPI in February 2013 and who was called "Cheese" had a lighter job and was not required to lift heavy objects because, according to Plaintiff, he had a bad back. Plaintiff also admitted that he did not have time to observe how other people were being treated. As to being assigned menial work, Plaintiff

referred to the cutter and admitted that all warehouse workers used the cutter. Plaintiff testified that additional work was getting a long piece of tubing which he also admitted other warehouse workers also did. He also admitted that he was not the only warehouse worker who moved, stacked or rearranged boxes in the warehouse and that his co-workers Raymond O'Brien and Anatoly Leskin also did this work. Plaintiff admitted that he did not understand the allegation in his Second Amended Complaint that Michael Kane or management selectively enforced policies against him and stated he didn't think policies were specifically used against him.

As to how Plaintiff was treated, Plaintiff admitted that he asked Mr. Krassan for a loan for a family situation and that Mr. Krassan did in fact give him a loan. Plaintiff admitted he was unaware of any other employee that asked Defendant HPI for a loan and received one.

Plaintiff admitted that when he started with Defendant HPI, he received an employee handbook and that he had read the employee handbook. Plaintiff admitted that he had to be with Defendant HPI for a year to earn 5 vacation days and 5 sick/personal days. Despite not having worked a year, Plaintiff admitted that he used all of the 5 paid sick/personal days after which, Mr. Nolan used his 5 paid vacation days for other days of work Plaintiff missed. After he used all 10 days allotted pursuant to the employee handbook, Plaintiff missed more work but admitted he did not keep track of the days he took off and admitted that Defendant HPI would have that information. According to Plaintiff, from January 2013 until his termination in September 2013, Plaintiff testified that he initially used a time card to clock in and out of work and, at some point it was changed and time was kept by a thumb print scan.

Plaintiff also acknowledged that the employee handbook also stated that poor attendance may lead to disciplinary action up to and including termination of employment. Plaintiff testified that Mr. Nolan was the individual who told him that he was being fired and also told

6

him "you're good guy, you work good – you work well, but – but you got absent for too many times so we have to fire you." Plaintiff admitted he did not know who discussed firing him and did not know who made the decision to terminate his employment. Plaintiff admitted that he did not know what non-Ukrainian employees were absent for months and not discharged. He admitted he did not know how many days his co-workers Patrick Gaier and Raymond O'Brien were out of work. Plaintiff admitted that nobody else took more time off than Plaintiff.

In response to Plaintiff's Interrogatories, Defendant HPI, by verified answer, stated that the sole decision maker as it related to Plaintiff's termination of employment with Defendant HPI was Ira Krassen. Further, Mr. Krassan testified during discovery that, based on an analysis of Plaintiff's time cards, Plaintiff missed 164.5 hours of work during Plaintiff's nine (9) months of employment at Defendant HPI. Additionally, the documents produced in discovery as to other employees who exceeded their allotted 10 paid sick/personal/vacation days did not even come close to the amount of time that Plaintiff had missed prior to his termination.

Following Plaintiff's deposition, counsel for Defendant HPI wrote to Plaintiff's counsel Mr. Karpf requesting that Plaintiff's Second Amended Complaint be withdrawn immediately in light of Plaintiff's deposition testimony and Defendant HPI's discovery responses, affording Plaintiff's counsel an opportunity to do so by June 5, 2015 to avoid the filing of the within Motion. (5/29/15 letter attached as Ex. A). Plaintiff's counsel, instead, served Notices of Deposition for Mr. Krassen and Mr. Nolan to take place on June 9, 2015. On June 8, 2015, Plaintiff's counsel wrote to Defendant HPI's counsel in which counsel misrepresented the testimony of Plaintiff in asserting that Plaintiff "established at this deposition that two (2) other employees missed more time from work than he did and were not terminated" when such fact was untrue. (6/8/2015 letter attached hereto as Ex. B). Plaintiff's counsel, in the June 8, 2015,

7

letter in an attempt to justify proceeding with this litigation by attempting to bootstrap Plaintiff's claim to another alleged claim by an unidentified former employee.

## II. ARGUMENT

Courts have means to deal with those who abuse the judicial process. Section 1927 of Title 28 of the United States Code, authorizes courts to require, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase the costs unreasonably and vexatiously …to satisfy personally such excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Section 1927 'requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the costs of the proceedings; and (4) doing so in bad faith or by intentional conduct.'" *In re Schaefer Salt Recovery Inc.,* 542 F.3d 90, 101 (3d Cir. 2008) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.2d 175, at 188 (3d Cir. 2002).

Federal courts possess the inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wildreness Soc'y,* 421 U.S. 240, 258-59 (1975)) (internal quotation marks omitted). "Bad faith is evident when 'claims advanced were *meritless*, that *counsel knew* or should have known this, and that the motive for filing the suit was an improper purpose such as harassment.'" *Macheska v. Thomson Learning and Hardcourt Learning Direct,* 347 F. Supp. 2d 169, 180 (E.D. Pa. 2004) citing *In re Prudential Ins. Co American Sales Practice Litigation Agent Actions*, 278 F.3d at 188 (citation omitted, italics in original). "[T]he principal purpose of sanctions under §1927 is 'the deterrence of intentional and unnecessary delay in the proceedings.'" *In re Prudential Ins. Co American Sales Practice*

*Litigation Agent Actions*, 278 F.3d at 188 (quoting *Zuk v. E. Pa. Psychiatric Inst. Of the Med. Coll. Of Pa.,* 103 F.3d 294, 297 (3d Cir. 1996).

The court's power against parties also extends to the regulation of attorneys. *See In re Prudential Ins. Co American Sales Practice Litigation Agent Actions,* 278 F.3d at 189. "A court may resort to its inherent power to impose sanctions even if the misconduct at issue is also sanctionable under statute or rules of the court." *Id.* "[A] court must ... exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50; *accord In re Prudential Ins. Co American Sales Practice Litigation Agent Actions,* 278 F.3d at 189, 191. Thus, "a finding of bad faith is 'usually' required" before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless "the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Prudential*, 278 F.3d at 181 & n. 4, 189 (quoting *Martin*, 63 F.3d at 1264).

> The imposition of sanctions [where a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order"] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindica[ting] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponents obstinancy."

*Chambers*, 501 U.S. at 46 (last two alterations in original) (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

Defendant HPI brings this motion for sanctions against Messrs. Karpf and Zahner for conduct throughout the course of this action, conduct that has resulted in extended motions practice and unnecessary discovery. The result of this conduct was impugning the reputation of

Defendant HPI that clearly had no liability under the law, a law that Messrs. Karpf and Zahner simply chose to ignore.

Federal Rule of Civil Procedure Rule 11 imposes a threshold pre-filing investigation that was clearly not performed by Plaintiff's counsel prior to the filing of the original and subsequent Amended Complaints. Rule 11 states in part that attorneys must not file suit without evidentiary support for the allegations contained in the complaint. This requires an attorney to make an objectively reasonable inquiry into the facts and law prior to filing and not to pursue an action that is not objectively reasonable based on the facts. Both prongs are highly fact-dependent, with broad discretion reserved to the trial court.

Defendant HPI submits that reasonable inquiry into the facts is a threshold requirement that first examines whether the pre-filing investigation was unreasonable based on the circumstances – in which case sanctions should be imposed – rather than whether there was a reasonable belief that the facts supported the allegations. *See Chandler v. Nw. Bank Minn., Nat'l Ass'n*, 137 F.3d 1053, 1057 (10th Cir. 1998) (imposing sanctions when attorney failed to conduct a reasonable inquiry, despite a reasonable belief that the allegations were based in fact); *see Henry v. Farmer City State Bank*, 127 F.R.D. 154 (C.D. Ill. 1989) (imposing sanctions when claim was not well grounded in law, despite being reasonably investigated). In these jurisdictions, only after it is determined that an initial investigation was reasonable, the focus then shifts to whether there is any factual support for the allegations. Thus, sanctions would be appropriate if the pre-filing investigation was unreasonable or the pre-filing investigation was reasonable but claims are baseless.

There are several factors this Court could consider to determine whether an investigation was reasonable:

- the time available for investigation;
- the extent of the attorney's reliance on the client for factual support for the document;
- the feasibility of a pre-filing investigation;
- whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
- the complexity of the factual and legal issues; and
- the extent to which development of the factual circumstances underlying the claim requires discovery.

In addition, attorneys should attempt to corroborate their client's story. What indicia of corroboration are needed depends on the circumstances, but, generally, an attorney should interview the client in detail; review available documents (i.e., for the initial complaint, those within the client's possession or that is publicly available; and for subsequent filings, what has been produced through discovery); interview witnesses identified by the client; and when necessary, consult an expert. In this case, based on Plaintiff's sworn testimony that he had not met with his attorneys at any time prior to his deposition leads to but one conclusion – Plaintiff's counsel did not meet with Plaintiff to conduct a reasonable inquiry into the fact supporting Plaintiff's claims. Had Plaintiff's counsel conducted such reasonable inquiry, it would have known that there was no evidentiary support for Plaintiff's claims as required by Rule 11. F. R. Civ. P. 11(b)(3). Yet, without having conducted a reasonable inquiry, Plaintiff's counsel commenced an action based on allegations that they knew or should have known were false.

Rule 11 further requires that the claims be warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. F. R. Civ. P. 11(b)(2). Here, Plaintiff's counsel's conduct is even more egregious. Even affording Plaintiff's counsel the benefit of the doubt that they believed that the allegations asserted were based on factual support, after oral argument on Defendant HPI's Motion to Dismiss the First Amended Complaint and after the Court painstakingly authored a Memorandum in support of

dismissing Plaintiff's First Amended Complaint, Plaintiff's counsel ignored the guidance provided by the Court during oral argument and further ignored the well-settled law the Court cited in its Memorandum – all of which placed Plaintiff's counsel on notice of the steps required prior to filing a Second Amended Complaint. Specifically, Plaintiff's counsel was on notice to conduct a reasonable inquiry in ascertaining the facts to ensure that the allegations of the Second Amended Complaint were supported and to consider the law in relation to such facts. Despite being afforded the time to make such reasonable inquiry and to consider the applicable law, Plaintiff's counsel failed in this regard and included additional allegations which, again, it knew or should have known had no factual evidentiary support.

Since it is the attorney who is an officer of the Court, and it is the attorney who drafts the pleadings and conducts the litigation based on what he claims, on behalf of his client to be facts, he is ultimately responsible for the conduct of the litigation. According to the Second Amended Complaint what was contained therein were "facts." The standard for determining whether a pleading is well grounded in fact for Rule 11 purposes is, according to *Hillsborough County v. A & E Road Oiling Service, Inc.,* 160 F.R.D. 655, 659 (M.D. Fla. 1995), "objectively reasonable under the circumstances." A filing meets this requirement if there is some evidentiary basis for the position taken at the time the pleading is signed.

Whether or not there is factual support can shift as parties learn new information. Thus, the attorney has a continuing obligation to ensure that the allegations are not baseless each time he or she files a paper with the court. An attorney should be subject to sanctions if he or she continues to assert baseless allegations after learning of the facts or legal precedent that undermined them. For example, in *Mercury Air Group, Inc. v. Mansour,* 237 F.3d 542, 549 (5th Cir. 2001), the Fifth Circuit affirmed sanctions in the form of reasonable attorney fees and

12

expenses against an attorney who conducted 150 hours of investigation prior to filing suit but who continued to pursue the claim even after learning that the claim was baseless. In this case, Plaintiff's counsel not only failed to undertake even a minimal investigation into the facts necessary to support Plaintiff's claims, but shockingly fabricated allegations which counsel knew or should have known were without factual support even after considering the basis of the Court's denial of Plaintiff's First Amended Complaint. Once Plaintiff provided sworn testimony at his deposition, testimony that was unequivocally contrary to the allegations of the Second Amended Complaint, Plaintiff's counsel nevertheless continues to pursue this meritless claim. Defendant HPI respectfully submits to the Court that the conduct of Plaintiff's counsel when analyzed in its totality, support sanctions under Rule 11. In addition, or in the alternative, Defendant HPI moves for sanctions against Plaintiff's counsel pursuant to 28 U.S.C. §1927 and the Court's inherent power to discipline attorneys who appear before it. For the reasons set forth above, Defendant HPI seeks sanctions in the amount of costs and attorneys' fees associated with the defense of this matter upon further application to the Court.

### III. CONCLUSION

Sanctions under Rule 11 are not compensatory; they are punitive and are designed to act as a deterrent. Defendant submits that the deterrence effect is not limited to Plaintiff's counsel alone, but to others who might be inclined to file similar suits with similar deficiencies. Defendant HPI also submits that the Court should exercise its inherent power under 28 U.S.C. §1927, and impose additional sanctions against Plaintiff's counsel for their actions that did nothing more than cause additional expense and delay not only to the Defendant but to this Court and federal government. Defendant HPI submits that Plaintiff's counsel's actions from the outset of the litigation show a clear disrespect not only for Defendant and counsel, but this Court.

This is a case which cries out for this Court to use its power to do what it can to curb Plaintiff's counsel and, unfortunately, others like them, from abusing the litigation process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

                                      Respectfully submitted,

                                      s/ Veronica W. Saltz
                                      Veronica W. Saltz, Esquire
                                      Attorney I.D. No. 52931
                                      SALTZ MATKOV P.C.
                                      998 Old Eagle School Road
                                      Suite 1206
                                      Wayne, PA 19087
                                      (484) 318-7225
                                      vsaltz@saltzmatkov.com

                                      Attorney for Defendant
                                      Hydraulax Products, Inc.

Dated: July 17, 2015

## CERTIFICATE OF SERVICE

I, Veronica W. Saltz, Esquire, attorney for Defendant Hydraulax Products, Inc. do hereby certify that on July 17, 2015, I caused a true and correct copy of *Defendant Hydraulax Products, Inc.'s Memorandum of Law in Support of Motion for Sanctions* to be filed via the Official Court Electronic Document Filing System, and that said document is therefore available for viewing and downloading from the ECF system. By virtue of this filing, service upon the following counsel, being an Electronic Case Filing User, is complete upon counsels' receipt of the Court's e-mail notification of the Notice of Electronic Filing:

> Ari Risson Karpf, Esquire
> Zachary J. Zahner, Esquire
> Karpf, Karpf & Cerutti, P.C.
> 3331 Street Road
> Two Greenwood Square, Suite 128
> Bensalem, PA 19020
> *Counsel for Plaintiff*

s/ Veronica W. Saltz<br>
Veronica W. Saltz, Esquire